Good morning, Your Honors. I'm Lawrence Heller, and I represent RUF International. May it please the Court. The District Court found that the term disinfectable was a generic term, and it was determined on summary judgment. And the thrust of our appeal is the assertion that this determination and then the determination as to whether the term disinfectable is descriptive should not have been determined on summary judgment. To start with, the nature of a trademark dispute is intensely factual. And, in fact, the Entrepreneurial Media case and other Ninth Circuit cases have held that making a determination of the protectability of a trademark in summary judgment is disfavored. To make the determination that that term was generic, the Court had to say that the term itself describes what the product is. And in this instance, quite clearly the term disinfectable does not describe what the product is. The product, of course, is an abrasive nail file, not metal, coated with abrasive material, which can be disinfected and then can be reused multiple times with multiple disinfections on multiple customers, bearing in mind that the channels of commerce of both the appellant and the appellee are the same, and they are to distributors who sell to beauty technicians and to beauty technicians, not to an ultimate consumer, which, of course, would not be concerned with whether a file can be disinfected and reused because they would be using it on one member or perhaps two members of a family. Suppose the word were easily usable, nail files. Would it be protectable or would it be generic? Protectable. Well, there are two terms that you have there, easily and usable. Usable, like many other I have not seen any cases that uses the term usable. And, of course, these are composite terms where you take the ABLE, A-B-L-E, and you combine it with another term. There is an anti-dissection rule, as Your Honors know, that says that even if the two terms in and of themselves, when they're taken apart, are not protectable, they certainly are protectable when put together. The best answer, I think, to Your Honor's question would be, number one, there have been many ABLE and composite terms which have been held protectable by the Ninth Circuit and other courts, other than the supplemental registrate, pullable, erasable, workable. But I think the most straightforward answer to your question, if I may, is I would have to know in what context it is being used. If it is being used in a context where it is, which usable quite likely might not be, and where you have to take a multi-step process to determine what the term means, then, yes, it would be protectable. And all of these words and their protectability are extremely case sensitive, because you always have to look at them in relation to the product to make the determination, does it tell what the product is, and for descriptiveness, does it describe the product? Again, descriptiveness is intensely factual, because of course you have to make a determination, if it is descriptive, whether there is secondary meaning. In our instance, we gave quite a lot of evidence of secondary meaning, which were extensive sales, the first use of that term in the nail care industry, at least with respect to that second factor, the first use that anyone has ever seen in writing. Granted that there was some evidence given by the appellee, which was testimonial evidence, that I've been in the nail care industry, there are two witnesses for quite some time, and I've heard it used for quite some time. But by way of seeing it in any writing, it had never been used prior to my client's use in 2001. Your client's use first, and then the statutory use second? The statutory use being the regulations and rules. Yes, that is correct. It was never used in any of the regulations prior to the time that my client used it. I know that is a point that is made by appellee, where he argues that this might create a monopoly, or that it would preclude the use by the regulatory agencies. But that use only occurred after it was used by the appellant, by Rudolph. Did Rudolph have something to do with procuring the statutory usage? Well, I can't directly answer that question. Rudolph, when he initially sought to register the trademark, and after he had used it for I think a number of months or about a year, he submitted to various regulatory agencies the testing that he had done that made the determination that these abrasive files could be repeatedly immersed and would maintain the fact that they were disinfected and could be used on multiple users. So whether, in fact, they took that word from the fact that he had said to them, these can be disinfected, I'm using the term disinfectable for them, we don't know because we don't know what their mental process is. Every time he used the word, did he use trademark? I'm sorry? Did he use a mark signal with it? Well, he didn't do that when he sent it, I believe, to the regulatory agencies, but apparently at one point prior to attorneys getting involved, he put a little R next to it, believing that since he had applied for registering it, that that meant that it could be registered. But I don't think he sent those to the regulatory agencies themselves. Did he ever send to the agencies that they were free to use it? No. Did he ask them to use it? No. What he did was, he said to the agencies, he said that, bear in mind, if you will, Your Honor, that this all came up because there apparently was a spate of citations issued to beauty technicians because there had been some infected nails. So in the context of worrying about whether he could sell these, whether they could be disinfected, these non-metal files, he went and did the testing. At the point in time after somewhat extensive testing, a determination was made by an independent laboratory that there were certain solutions they could be repeatedly immersed in and that they would maintain their disinfected state. At that point, he wrote to the regulatory agencies and said to them that there should be a, the files, the abrasive non-metal files that can be disinfected should have a mark on them showing that they are able to be disinfected. And that is how that came up. And within the context of that, said that he had applied for the disinfectable mark. I think there was only one or two regulatory agencies. He wrote to quite a number of them that, I'm not sure if it was one or two, that then used a term disinfectable in their rules and regulations. If I am correct, that has now been removed from the rules and regulations. Do you want to save any time for rebuttal? There's two minutes left. Unless, if Your Honors have no further questions, I will stay away from, of course, very briefly, we maintain that this is a suggestive term. It takes a multistage mental process to determine what it is which I have described. At worst, if it's not generic, as I said, it is descriptive and there should be a factual determination made by a trier of fact and not as a matter of law as to the various factors of secondary meaning. And with that, thank you, Your Honors. I'll save the rest of my time for rebuttal. Thank you. Good morning. Defendants have submitted an overwhelming record here of that the term disinfectable is generic. It comprises testimony of persons in the trade that it's been widely used for a long period of time. There was a question about prior use. The record indicates that various people have testified, Vicki Peters for one, Mr. Schoon for another. They've been in the business for 15, 20, 25 years. They testified that it was a term that was widely used in the industry. So I don't think there's no question on this record that Rudolph was not the first to use the term, even in the nail industry. In addition to the testimony of persons in the trade, we have competitors' generic usage. We have Rudolph's own generic usage. We have generic use in the media, the magazine articles and so forth. Generic use in the state cosmetology board regulations, and there was a question about those regulations. Rudolph wanted the states around the country to legislate that the term disinfectable had to be on the files. And he, that of course was, and he wrote to each of the state boards, all 50 boards, urging them to do this. Only one of record actually did that, which was the state of Oregon. But several other states actually used the term disinfectable in their regulations. Nebraska, I mentioned Oregon, Vermont, Virginia. In addition, the expert report of Dr. Numburg, Reilly's expert linguist, documents substantial use of the term outside of the industry, as admitted by plaintiffs, on a plethora of other products dating back as far as the 1960s. There was a question about easily usable. That, I think, goes to the issue of there is no question in the law that an adjective can be generic. Sure, we think normally of nouns as being generic, but clearly an adjective can be generic. Cites for that would be the A.J. Canfield case, the chocolate fudge case for diet soda, the Miller Brewing case, light beer, Federal Circuit case of Nupla, which came from the Central District of California, that was cushion grip for tool handles. Defendants have the burden to show the primary significance of the term here is a brand. They simply haven't done it. They haven't carried their burden. They offer no survey evidence. They do rely upon four canned statements by technicians, and if the court's not interested in them, I won't dwell on them, but I was going to discuss them briefly. Those are four statements by these technicians, and you only need to look at one because they're all the same, and they just don't withstand scrutiny to create an issue of fact. Brand signifies, we can all agree on the law, a brand signifies who are you. Generic term signifies what are you. Let's apply that test to the other technicians. I understood that nail files marked disinfectable could be immersed in an EPA-registered disinfectant for a specified period of time and then could be reused. That then is telling the techs not who are you, not is it a, they're not saying it's a brand or a trademark, it's telling them what are you, it's a file that can be disinfected and reused. How about paragraph four of the tech statements, the alleged confusion? When I initially saw that Realey's was using the term disinfectable, I assumed that Realey's was somehow affiliated with Rudolph since for the, since the only time I had ever seen disinfectable up to that time was on a Rudolph file. Well, the Ninth Circuit in the Surges Center's case, which in turn cites to the U.S. Supreme Court established law, that being that a plaintiff must show more than a subordinate meaning. Where consumers have only seen a generic term on one person's product, one seller's product, they may associate that term with that seller's product because they've only seen it in connection with that seller's product. It's not because it's a brand, it's because they haven't seen it on anyone else's products. That does not negate genericness, Surges Center's U.S. Supreme Court's shredded wheat. And this principle applies here to the four tech statements, who had only seen the term in connection with a Rudolph file, they therefore assumed initially some affiliation, not because they thought it was Rudolph's brand. You never see the term trademark or brand throughout any of the statements, but because they had only seen it on Rudolph files. Well, how about an issue of fact from Rudolph's use? The sales, the advertising, Mr. Heller mentioned. No, that doesn't help either. Why? Because the sales by Rudolph, let's look at how Rudolph uses the term on the files. A site for the record on that is Volume 7, 2071. It shows you how Rudolph uses the term on the files themselves, and it says antibacterial, disinfectable. And as Rudolph himself testified in his deposition, that tells one that the file is antibacterial and it's disinfectable. Well, how about the advertising? No, that doesn't help either. That simply reinforces the generic meaning, because first of all, little or there's absolutely little or no evidence of record where any of these ads ran, how long they ran, what was the distribution of the ads, nothing there. More importantly, many of the Rudolph ads use the term generically. A couple of sites for the record, Super Long Lasting, Disinfectable, Antibacterial, that's clearly a generic usage. Volume 7, 2071, actually having a definition of disinfectable in their own ad, defining disinfectable as the ability of an implement to be disinfected, and stating as follows, Soft Touch, which by the way is their true brand, Soft Touch has been marketing washable and disinfectable cushion files for more than 25 years. Issue of fact from the linguistics expert, no. What does he say? He says nail care professionals would recognize Rudolph's use of the term disinfectable to mean both able to be disinfected and reusable on other occasions. That site is Volume 9, 2509. That's what I would say on genericness. Quickly on secondary meaning, I just would like to make one point on the secondary meaning. No evidence of record of the extent of the sales or advertising before the critical date of Realey's use, simply to date sales. A couple of minutes on fair use for my remaining time. No triable issue of fact as to fair use because why? The use is descriptive and in good faith. That's Realey's use now, descriptive and in good faith. Well, what's the record on descriptiveness? There's lots of brands that are of record. They point to one and rely solely on one. That's Volume 9, 2576. Your Honors, if you look at that ad, I think you will agree that that use there is descriptive. It is not as a brand. Indeed, plaintiffs accuse Realey's of misleading consumers because the Realey's files they say are not truly disinfectable. Well, that's simply an argument that the Realey's use is misleading a brand, their own argument. As I said, there are various other exhibits of record for Realey's use. I think it's very instructive to look at Volume 7, 2079 versus 2080 because that shows you the transition between what Realey's used to do, which was had they had on the file washable, sanitizable, and then replaced it in 2080 with washable, disinfectable. Replacing the sanitizable term with disinfectable. A record on good faith. Mr. Falley, the principal of Realey's, testified that as to the good faith that he had in adopting this term based upon a request from a major customer, Sally's, and the regulatory issues that were ongoing at the time in California. Sally's wanted their files to say disinfectable because there was concern about what they would do, whether those files would sell very well if they didn't have the term on it. That testimony by Mr. Falley is corroborated by an independent document, the Landy Letter, which was the sales representative, represented the Sally's account. That's Volume 7 at 1823. And, of course, then we also have the Rudolph quote in the magazine article where he's quoted as inviting the industry to discontinue use of the term sanitizer and to replace it with sanitizable. The term to adopt now is disinfectable. He claims he was misquoted. It doesn't matter for the point that I'm making, and that is evidence of good faith. The fact is that it did appear in the magazine, and that's uncontestable, and was not at any time corrected. No evidence of record to counter that good faith, just speculation from plainness that, well, those reasons seem, quote, far-fetched. I'm down to my last ten sentences. So, if you'll give me a few seconds, I think I'll stop there, unless there's a question. Thank you. Let me respond to some of the points that were raised. With respect to the record of use, as I said, there is absolutely nothing in the record that shows prior use in the nail file industry or for abrasive files of the term disinfectable. That was admitted to by the Apalis expert, Dr. Nunberg. Secondly, counsel made a correct point where he noted that virtually all of the cases that have found words to be generic have been nouns. And the reason for that is, of course, because a noun describes what it is. The leading cases on those are Surger Center and Filipino Yellow Pages. The four technicians' statements went to likelihood of confusion. And, of course, we showed likelihood of confusion through a number of various factors which are recognized by the Sleekcraft case, but not the least of which was actual confusion. All of the argument that you just heard really goes to factual and credibility issues. With respect to fair use and the good faith of Raley's in using it, I maintain that there was no good faith. Mr. Fowley, who owns Raley's and first used the term, said that he was aware of Rudolph's use at the time that he used it. The story about someone from Sally's telling one of his salesperson is pure hearsay. They cannot identify who from Sally's said it, and it seems rather unlikely on its face anyway. And unlike Rudolph, who did extensive testing with respect to the antibacterial aspect of the files through an independent lab, Mr. Raley looked at it under a microscope, put it in some bleach, put it under a microscope and said, I didn't see anything wiggle, so I figured there was no more bacteria. I do note that I am about 25 seconds past my time and subject to any questions. I thank your honors. Next case on the calendar is Goldstein versus Vandy Camp. Thank you for watching.
judges: Beezer, Reinhardt, Henderson